IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEAH K.,[1]

    Plaintiff,        Civ. No. 1:20-cv-00561-AA

  v.              **OPINION & ORDER**

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

AIKEN, District Judge:

    Plaintiff Leak K. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is REVERSED and REMANDED for award of benefits.

## BACKGROUND

    On October 27, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on April 8, 2016. Tr. 15. The applications were denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on February 15, 2019. *Id.* On March 6, 2019, the ALJ issued a decision finding Plaintiff not disabled. Tr. 28. On February 19, 2020, the

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 8, 2016.  Tr. 17.

At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder, borderline intellectual functioning, history on meningioma, right eye vision loss, and lumbar spine degenerative disc disease. Tr. 17.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 18.

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: she is limited to lifting and carrying twenty pounds occasionally and ten pounds frequently; she can stand or walk about six hours but has no sitting limits; she is limited to occasional climbing, balancing, stooping, and kneeling, and she can never crouch or crawl; she must avoid workplace hazards such as unprotected heights and heavy machinery; she is limited to frequent near acuity, far acuity, peripheral acuity, depth perception, and color vision; she must avoid jobs that require binocular vision; and she is limited to understanding and carrying out simple instructions.  Tr. 20-21.

At step four, the ALJ found Plaintiff was unable to perform any of her past relevant work. Tr. 27.  At step five, the ALJ determined that Plaintiff was capable of performing work as a basket filler, garment sorter, and storage facility rental clerk.  Tr. 27-28.  As a result, the ALJ found that Plaintiff was not disabled.  Tr. 28.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record.

*Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly discounting Plaintiff's subjective symptom testimony; (2) improperly discounting medical opinion evidence; and (3) improperly discounting the opinion of the U.S. Department of Veterans Affairs ("VA").

### I.    Medical Opinion Evidence

Plaintiff contends that the ALJ erred by failing to properly consider the medical opinions of treating neurosurgeon Matthew Miller, M.D. and examining psychologist Anita Kemp, Ph.D.[2]

---

[2] Plaintiff also contends that the ALJ erred by giving great weight to consultative examiner Shahid Ali, M.D. An ALJ is responsible for interpreting medical opinion evidence, however, and is only required to provide supportable reasons for rejecting or discounting such opinions. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ credited Dr. Ali's opinion and did not err by doing so.

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

### A. Dr. Miller

Dr. Miller prepared a medical source statement for Plaintiff in which he reported that he had been her treating physician since October 2014. Tr. 783. Dr. Miller wrote that Plaintiff had been diagnosed with medial sphenoid with meningioma, which caused headaches "related to craniotomy and frontal sinus violation." *Id.* Dr. Miller rates Plaintiff's headaches as moderate in intensity, with throbbing pain, inability to concentrate, visual disturbances, and mental confusion. *Id.* The headaches were worse with pollen and other environmental exposures. *Id.* Dr. Miller attributed Plaintiff's headaches to her brain tumors, sinusitis, and a 22-hour craniotomy in October 2014. Tr. 784. Dr. Miller reported that Plaintiff's headaches were triggered and exacerbated by attempting to read a computer screen. *Id.* Dr. Miller opined that Plaintiff's difficulties in fixating her vision and in reading would leave her incapable of even low-stress work. *Id.* Dr. Miller left the sections of the form asking about the frequency and duration of the headaches blank, Tr. 783, but reported that Plaintiff had good days and bad days and that the headaches would leave Plaintiff

unable to concentrate for 25% or more of a workday and would result in more than four absences in a month.  Tr. 785.

The ALJ gave "little weight" to Dr. Miller's opinion, finding that was "not well supported by medically acceptable clinical and laboratory diagnostic techniques," and "inconsistent with other substantial evidence in the case record."  Tr. 25.  The ALJ noted that Dr. Miller did not give an opinion as to the frequency of Plaintiff's headaches but did opine that Plaintiff would require breaks and absences from work because of her headaches.  *Id.*  The ALJ found this "incongruous."  *Id.*  However, the Court concludes that Dr. Miller's opinion about Plaintiff's need for breaks, her inability to concentrate, and her probable absences from work *is*, for all practical purposes, an opinion about the frequency of Plaintiff's headaches.[3]

The ALJ also noted that Dr. Miller's opinion was inconsistent with Plaintiff's daily activities.  Tr. 25.  Plaintiff's daily activities, which included volunteering with her church, participating in card-making, and managing routine household task in her husband's absence, are not, as the Commissioner suggests, indicative of the ability to do work, nor do they contradict Dr. Miller's opinion concerning Plaintiff's difficulty maintaining concentration or regular attendance.  The Court concludes that the ALJ failed to provide legally sufficient bases for discounting the treating physician opinion of Dr. Miller and that the error was harmful.

**B.  Dr. Kemp**

Dr. Kemp examined Plaintiff in January 2017.  Tr. 574.  Testing determined that Plaintiff had borderline intellectual functioning and that her perceptual reasoning abilities; her ability to sustain attention, concentrate, and exert mental control; and her ability to process simple or routine

---

[3] The Commissioner points to a treatment note in which Dr. Miller describes Plaintiff's headaches as "intermittent" as evidence of a contradiction between Dr. Miller's notes and his opinions concerning Plaintiff's ability to function.  Tr. 796.  However, the word "intermittent" indicates only that the headaches were not continuous without reference to their frequency and so the note does not contradict Dr. Miller's conclusions.

visual material without error was similarly in the borderline range. Tr. 578. Dr. Kemp diagnosed major depressive disorder, with a "fairly good" prognosis for improvement, and borderline intellectual functioning, with the note that Plaintiff's prognosis was "poor for cognitive improvement." Tr. 584. In functional terms, Dr. Kemp opined that Plaintiff was capable of performing simple and repetitive tasks without supervision and that she was competent to handle funds in her best interests. Tr. 585. However, Dr. Kemp assessed moderate impairment to Plaintiff's ability to interact appropriately with supervisors, coworkers, and the public and severe impairment to Plaintiff's ability to do complex tasks; to maintain regular attendance; to do work activities in a safe manner; and to deal with changes in routine work setting. *Id.*

The ALJ found that Dr. Kemp's opinion was "out of proportion to the record as whole" and inconsistent with Plaintiff's daily activities, the VA treatment records, and Dr. Kemp's own opinion that Plaintiff was capable of handling her own funds. Tr. 24.

With respect to Plaintiff's ability to handle her own funds, that finding was made in reference to whether a representative payee should be assigned to receive benefit payments on Plaintiff's behalf. *See* 20 C.F.R. §§ 404.2001, 408.601(b), 416.601(b). There is no inconsistency between Dr. Kemp's findings following examination and testing and her conclusion that Plaintiff did not require the appointment of a representative payee.

With respect to inconsistencies in the record, the Commissioner points to a VA treatment note from October 2016, in which Plaintiff reported she was "doing a lot better," which led her treating psychologist to note that her depression was "in remission." Tr. 473-74. The Commissioner does not point to any other treatment notes that contradict Dr. Kemp's conclusions. The Ninth Circuit has cautioned, however, that ALJs may not "cherry-pick" from "mixed results to support a denial of benefits," especially in the context of mental illnesses which may exhibit

fluctuations in symptoms such that "any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." *Garrison v. Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014). The ALJ's reliance on a single VA treatment note amounts to improper cherry-picking to support a denial of benefits.

With respect to Plaintiff's daily activities, such as volunteering with her church, participating in card-making groups, and taking care of herself while her husband was traveling for work, these activities are not inconsistent with the specific functional limitations assessed by Dr. Kemp. The Court concludes that the ALJ failed to provide sufficient reasoning for discounting Dr. Kemp's opinion and that this was harmful error.

## II.    Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle*, 533 F.3d at 1160.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of

credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

In this case, Plaintiff testified at the hearing that she was unable to work due to headaches and loss of vision following brain surgery in October 2014. Tr. 42-43. Plaintiff estimated that if she were working, she would need to miss three to four days per week due to her symptoms and that she would need to take breaks twice per hour. Tr. 50-51.

Plaintiff testified that she cannot stand, sit, or lay down for extended periods and needed to frequently change position. Tr. 43. Plaintiff underwent back surgery in April 2018 but continues to have pain in her lower back and legs. Tr. 48. Plaintiff rated her average back pain as a six out of ten and testified that the medication she takes for the pain causes her to be groggy and tired. Tr. 49. Plaintiff estimated that she could sit for ten minutes before she would need to get up and move arounds and that she needs to lay down five or six times per day. *Id.* Plaintiff estimated that she could lift or carry "probably about ten pounds" but that liftings causes dizziness. Tr. 50. Plaintiff's back pain interferes with her ability to sleep and she gets between four and five hours of sleep in a night. Tr. 51. Movement of her head causes dizziness and if she bends over for too long, Plaintiff testified that she passes out. Tr. 43.

Plaintiff has difficulty focusing or concentrating and must take notes to avoid forgetting things. Tr. 45. She had trouble articulating her thoughts and struggles with verbal instructions. Tr. 45-46. Plaintiff also testified that since her brain surgery, she is easily distracted and would struggle with changes in routine. Tr. 46. In terms of mental health, Plaintiff takes anti-depressants and gets counseling through the VA following a suicide attempt in 2003. Tr. 51-52.

Plaintiff's headaches require her to take painkillers and lay down in a darkened room. Tr. 46. The headaches are exacerbated by heat and by continuing radiation treatments for her brain tumors. Tr. 47.

Plaintiff testified that she has extremely limited vision in her right eye. Tr. 47-48. This causes strain to her left eye. Tr. 48. Plaintiff testified that looking at computer screens exacerbates her eye issues which makes It difficult for her to use monitors or cash registers as she previously did. Tr. 43-45. Because of her vision problems, Plaintiff is no longer able to read books. Tr. 48.

The ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of the symptom are not entirely consistent with the medical evidence and other evidence in the record." Tr. 22.

The ALJ found that Plaintiff's physical complaints were not fully supported by the objective medical evidence. Tr. 22-23. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ and the Commissioner point to a January 2017 examination by Dr. Shahid Ali, in which Dr. Ali noted that Plaintiff was able to walk into the examination room without assistance, sit comfortably, and remove her shoes without difficulty. Tr. 438. Dr. Ali observed that Plaintiff had normal muscle bulk and tone, negative straight leg raise, and opined that Plaintiff could stand or walk for six hours and sit without limitations. Tr. 440. In an examination by Dr. Patrick Mahoney in March 2018, Plaintiff had "full and equal strength in bilateral lower extremity myotomes with pain limitation and with all maneuvers on the left in a positive dural tension sign." Tr. 633. Dr. Mahoney found "[a]ntalgic gait with difficulty with heel gait." Tr. 634. Dr. Mahoney diagnosed

Plaintiff with left lumbar radiculopathy.  *Id.* The Court concludes that the ALJ reasonably considered this medical evidence in assessing Plaintiff's testimony concerning her back pain, but that evidence cannot, standing alone, serve to discount Plaintiff's subjective symptom testimony.

The ALJ found that Plaintiff's daily activities were inconsistent with her reports of disabling impairment.  Tr. 24.  Consideration of daily activities is proper when they indicate activity or skills that are transferable to the workplace, or when the activities contradict the claimant's other testimony.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.  Here, the ALJ noted that Plaintiff "takes care of her own dog, prepare[s] her own meals, and do[es] household chores, if only for short periods of time."  Tr. 24.  Plaintiff was active in a group for women veterans, and in church activities "including 'running hot meals' where she engaged in some heavy lifting."  Tr. 24, 632.  Plaintiff occasionally worked part time, ate at restaurants outside of the home, and visited her family.  Tr. 24.

As to the church activities, the Court notes that Plaintiff's description of running hot meals and engaging in heavy lifting was presented to her treatment provider in the past tense and followed by the note that "[a]lmost all activity began to make her li[f]e worse" as a result of her back pain.  Tr. 632.  This is not inconsistent with Plaintiff's testimony.  With respect to housework, the ALJ noted that Plaintiff did those activities only for short periods of time and Plaintiff reported that she needs to take breaks and sleep when she suffers from headaches.  Tr. 175.  On its face, this is not, as the Commissioner suggests, Def. Resp. 6-7, ECF No. 21, the sort of activity that is transferrable to the workplace, nor is it inconsistent with Plaintiff's testimony.  "One does not need to be 'utterly incapacitated' in order to be disabled," and the Ninth Circuit has repeatedly cautioned courts "that

the mere fact that a plaintiff has varied on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The record shows that Plaintiff engaged in part time work in 2017 and 2018, although this did not amount to substantial gainful employment. Tr. 162, 165. An ALJ "may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). However, holding oneself out for part-time work is not inconsistent with the receipt of disability benefits, which only require the inability to work full time. *Carmickle*, 533 F.3d at 1161-62. Here, Plaintiff worked a single day at a deli in 2017 and earned only $31.50. Tr. 41, 162. In 2018, the work in question was in the office of a horse therapy program and amounted to approximately two hours per week until Plaintiff "just couldn't do it anymore." Tr. 40. Plaintiff testified that the job required her to look at computer screens, which exacerbated her visual impairments, and that because she "had to keep getting up and moving around" she wasn't able to complete her work in the two hours allotted to her. Tr. 44. The ALJ did not explain how such minimal work activity contradicted Plaintiff's testimony.

In sum, the Court concludes that the ALJ failed to give clearing and convincing reasons for discounting Plaintiff's subjective symptom testimony and the Court further concludes that this error was harmful.

### III.    VA Disability Determination

Plaintiff asserts that the ALJ erred by discounting the VA's disability determination for Plaintiff. "[A]n ALJ must ordinarily give great weight to a VA determination of disability" because there is a "marked similarity between these two federal disability programs." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). "Because the VA and SSA criterial for

determining disability are not identical, however, the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.*

Here, the VA has rated Plaintiff as 90% disabled with service-connected disability.  Tr. 590.  The VA found Plaintiff 40% disabled by degenerative arthritis of the spine; 10% disabled by limited flexion of the thigh; 10% limited flexion of the knee; 10% by scars; and 70% by major depressive disorder.  Tr. 590.

The ALJ noted the VA's determination, but assigned it "little weight," because "a determination made by another agency is not binding on us." Tr. 26.  The ALJ provided no other basis for discounting the VA's disability determination.  This is not a sufficient basis for discounting a disability finding by the VA.  "The difference in standards between the two agencies allows an ALJ to give less weight to the VA's determination if he provides persuasive, specific, valid reasons for doing so that are supported by the record, but it is not, in itself, a sufficient reason to discount the VA's determination."  *Steele v. Berryhill*, Civil No. 3:16-cv-01736-JE, 2018 WL 468280, at *3 (D. Or. Jan. 18, 2018); *see also Underhill v. Berryhill*, 685 Fed. App'x 522, 522 (9th Cir. 2017) ("The first reason given by the ALJ—that the rating system used by the VA is not the same as the one used by the Social Security Administration—is not valid.").

The Commissioner has offered arguments as to why the VA disability determination might be discounted, but they amount to *post hoc* rationalizations and are not reflected in the ALJ's decision.  Given the clear disconnect between the ALJ's decision and the determination of the VA and the lack explanation for the divergence, the Court concludes that the ALJ's failure to properly consider the VA disability rating was harmful error.

**IV.    Remedy**

As discussed above, the Court has concluded that the ALJ's determination contained harmful error, necessitating remand.  The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court.  *Triechler v. Comm'r*, 775 F.3d 1090, 1101-02 (9th Cir. 2014).  A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability.  *Id.* at 1100-01 (internal quotation marks and citations omitted).  The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

In this case, the Court has concluded that the ALJ erred by discounting Plaintiff's subjective symptom testimony and the medical opinions of Drs. Miller and Kemp.  Crediting those opinions and reviewing the record as a whole, the Court is satisfied that Plaintiff is disabled and that remand for calculation and award of benefits is merited in this case.

**CONCLUSION**

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and REMANDED for calculation and award of benefits.

It is so ORDERED and DATED this _____21st_____ day of July 2022.


_/s/Ann Aiken_____
ANN AIKEN
United States District Judge